# In the United States Court of Federal Claims

No. 20-266
Filed: March 2, 2021

|  |  |
|---|---|
| **JESSICA PATE,**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | **Keywords:** Repayment of Employee Training Costs; Continued Service Agreement; Summary Judgment; Illegal Exaction; Subject Matter Jurisdiction |

*Jessica Pate, pro se,* Plaintiff.

*Stephanie A. Fleming,* Trial Attorney, *Jeffrey Bossert Clark*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Eric P. Bruskin*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom were *Lindsay Gower* and *Kelly J. Burns*, Office of General Counsel, United States Department of Veterans Affairs, Washington, D.C., Attorneys for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

In this suit, *pro se* Plaintiff Jessica Pate seeks recovery of monies withheld from her salary by the United States Department of Veterans Affairs ("VA"), her former employer, to recoup expenditures for  training while she was an intern at the VA. Plaintiff seeks partial summary judgment on the first Count of her Complaint, an illegal exaction claim. She further claims in her second Count that in pursuing collection through a payroll deduction, the VA falsely claimed to the U.S. Treasury that the debt was enforceable. The United States filed a Cross-Motion for Summary Judgment and a Partial Motion to Dismiss. For the reasons set forth below, the Court **GRANTS** the United States' Motion for Summary Judgment and its Partial Motion to Dismiss and **DENIES** Ms. Pate's Motion for Partial Summary Judgment.

### I.    Background

The VA Acquisition Academy ("VAAA") trains acquisition professionals in support of the VA's mission, and was created in response to increased government outsourcing of goods and services requiring better oversight of acquisition. Veterans Affairs Acquisition Academy, (https://www.acquisitionacademy.va.gov*).* The Job Announcement for Ms. Pate's Contract Specialist position describes it as a "developmental position" in the two-year Acquisition Intern Program preparing participants for professional certification in contracting. (Def.'s Cross-Mot., ECF No. 19, Attach. 19-1, Ex. 2 at 2).  Ms. Pate began an internship as a Contract Specialist with

the VA on June 30, 2013. (Compl. at 3, ECF No. 1). On June 24, 2013, she signed a Continued Service Agreement ("CSA") with the VAAA agreeing that after completion of VAAA training, she would serve in the VA for three years. (Compl. Ex. 3 at 2). The CSA specified that her "Period of Obligated Service" after completion of training would run from August 6, 2015 to August 5, 2018. (*Id.*). The CSA also contained a clause stating that in the event Ms. Pate left the VA to work in another Federal agency before the period of obligated service expired, she would "give the VA Acquisition Academy Acquisition Internship School Vice-Chancellor at least 30 calendar days advance written notice" so that a decision on reimbursement of training costs could be made. (*Id.*). That clause went on to state that in the event Ms. Pate failed to give the advance notice, she agreed to reimburse the VA for her training costs. These unambiguous provisions are critical to resolution of Ms. Pate's claims.

On August 6, 2015, upon completion of her internship training at the VAAA, Ms. Pate began working at the VA's Strategic Acquisition Center ("SAC") in Frederick, Maryland. (Compl. at 3). On February 2, 2016, she accepted an offer of employment as a Contract Specialist with the U.S. Defense Logistics Agency ("DLA"), in Huntsville, Alabama. (Def.'s Cross-Mot., Attach. 19-1, Ex.4 at 10). More than two years before her obligated service period ended, she transferred from her VA job to commence work at DLA on April 3, 2016. (Compl. at 5). Ms. Pate did not inform the VAAA of her departure from VA employment. (Def.'s Cross-Mot. at 11).

While conducting an internal review, the VAAA learned of Ms. Pate's transfer and after calculating her outstanding debt, sent two notification letters to her in August 2018 and September 2018 at her home address on record at the VA. (Def.'s Cross-Mot., Attach. 19-1, Ex. 9 at 29–34). Ms. Pate did not update her address after leaving VA employment. (Def.'s Cross-Mot. at 10). Thus the VAAA notification letters did not reach her. Def.'s Cross-Mot., Attach. 19-1, Ex. 10 at 35. Consequently, Ms. Pate did not respond to the debt notices and in April 2019, at the VA's request, the Treasury began to offset her biweekly pay to recover the debt, which the VA calculated to be $11,049.97. (Compl. at 5). In May 2019, Ms. Pate submitted a letter to the VA disputing the debt. (Def.'s Cross-Mot., Attach. 19-1, Ex. 10 at 35). In September 2019, she requested a hearing. (Def.'s Cross-Mot., Attach. 19-2, Ex. 11 at 1). To accommodate the hearing process, the collection of Ms. Pate's debt was suspended in October 2019 after collection of $3,959.43, and the balance of $7,870.64 remains outstanding. (Def.'s Cross-Mot., Attach. 19-2, Ex. 13 at 5; Def.'s Cross-Mot. at 11). The VA subsequently issued a hearing decision affirming the validity of Ms. Pate's debt, "due to the fact that you voluntarily left employment with the VA before fulfilling your service agreement and you did not provide VAAA with the agreed upon notice." (Def.'s Cross-Mot., Attach. 19-2, Ex. 13 at 2–4). This litigation followed.

Ms. Pate sets forth two Counts in her Complaint. Count I alleges that the VA's collection is an illegal exaction in violation of Section 4108(b) of the Government Employees Training Act ("GETA"), 5 U.S.C. § 4100 *et. seq*. (Compl. at 6–7). GETA gives Federal agencies general authority for development and administration of their employee training. 5 U.S.C. § 4103. In Count II, Ms. Pate alleges that due to the illegal exaction, the VA made "materially false certifications" to the Treasury that the debt was legally enforceable when it arranged for collection from her federal salary. (Compl. at 7–8).

2

## II.     Analysis

In support of her illegal exaction claim, Ms. Pate relies principally upon the notice requirement in Section 4108(b) of GETA. (*Id*. at ¶¶ 27, 28, 31, 32). Section 4108(a)(1) of GETA provides that Federal employees who receive training from their agency must agree in writing to continued service after training for a period "at least equal to three times the length of the training period." Section 4108(a)(2) provides that should the employee leave before that obligation has been met, he or she must agree to pay back his training expenses. Section 4108(b) provides that:

> The payment agreed to under subsection (a)(2) of this section may not be required of an employee who leaves the service of his agency to enter into the service of another agency in any branch of the Government unless the head of the agency that authorized the training notifies the employee before the effective date of his entrance into the service of the other agency that payment will be required under this section.

Ms. Pate argues that the VA did not meet the notice requirement of Section 4108(b) because at the time of her decision to leave the VA she was not notified that her service obligation would be enforced. (Pl.'s Mem. in Supp. of MPSJ ("Pl.'s Mem.") at 15, ECF No. 15). She maintains that both her direct employer SAC and VA Human Resources were aware of her planned departure and did not mention a service obligation. (*Id*. at 19). She points to further support for this in part of the transfer paperwork, Standard Form 75 (SF75), "Request for Preliminary Employment Data."  In the SF75 her new employer, DLA, requested Ms. Pate's employment information from VA Human Resources. (Def.'s Cross-Mot. at 4). In completing that form, a VA Human Resource Specialist answered "No" to Question 60-A, "Does Employee Have an Obligation to Remain in Government Service for a Specific Period Because of Training Received?" (Pl.'s Decl. in Supp. of MPSJ, Ex. 7 at 3, ECF No. 16). Ms. Pate argues that she was entitled to rely on this in assuming she would have no service obligation. (Pl.'s Mem.at 9–10). With respect to the CSA she signed when she began employment, Ms. Pate maintains that the CSA's requirement to give notice to her employer before leaving violates the notice requirement in GETA because it puts responsibility for notice on the employee rather than on the employing agency. (*Id*. at 21). She also argues that VAAA had no lawfully delegated authority to exercise discretion on enforcement or to provide notice of collection, and in any event the collection notices provided by VAAA were untimely. (*Id*. at 22).

The United States responds that the VA's collections were made pursuant to a lawful service agreement that was consistent with GETA policy and not in violation of any statutes or regulations. The United States argues that the notice of service obligation enforcement required by Section 4108(b) of GETA was provided to Ms. Pate by the terms of the CSA she signed at the commencement of employment. (Def.'s Cross-Mot. at 11–12). As to Ms. Pate's argument that she relied on VA Human Resources' mistaken representation of her service obligation in the SF75, the United States points out that the SF75 was not prepared for her but for her new employer DLA, and that in any event, Ms. Pate did not see it until she had already accepted the position there. (Def.'s Reply at 13, ECF No. 23). Further, the United States urges that this error should not affect Ms. Pate's debt because her CSA specifically required that reimbursement decisions would be made by the VAAA School Vice-Chancellor. (Compl. Ex.3 at 2). Finally, the

3

United States maintains that the Secretary of the VA has delegated notice authority under Section 4108 to the "official authorizing training." (Def.'s Cross-Mot. at 20–21). And that authority is held by VAAA in this instance because it has "sole ownership and management over the training program and corresponding continued service agreements" for interns. (Def's Reply at 9, quoting VAAA School Vice-Chancellor, Decl., Ex. 19-18 at 2).

In this case, both parties seek summary judgment as to the legality of the VA's collection of training costs from Ms. Pate. Pursuant to RCFC 56, a party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, at 248, 250 (1986). When, as in this case, both parties move for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011), (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). There are no genuine disputes of material facts relating to Ms. Pate's illegal exaction claim, and therefore it is ripe for review. (Pl's Mem. at 4; Def's Cross-Mot. at 11).

To prove that the VA's collections were an illegal exaction (Count I), Ms. Pate must show that the money "'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007 (Ct. Cl. 1967)). Here, Ms. Pate has not shown that the VA's collection actions violated the notice requirement of GETA, despite an impressive effort. It is clear from the record, and Ms. Pate does not dispute, that she signed the CSA prior to commencement of her training. The CSA sets forth her obligation to serve in the VA for a period of three years following completion of her intern training, as required by Section 4108(a) of GETA. The dates of the period of obligated service are also delineated in the CSA, and it specifically requires notice to the Vice Chancellor of VAAA prior to departure from employment. There is no dispute that Ms. Pate did not give the required notice to VAAA. She also seeks to invalidate the collection as untimely, but cannot avoid the conclusion that the VAAA's timing was caused at least in part by her failure to provide notice that she was departing and her change of address. As the United States points out, the deferral of collection likely worked to her benefit. It is difficult to sustain Ms. Pate's objections when she has taken the benefit of training under the CSA but has not fulfilled her part of that bargain. *See Makowiec v. United States*, 137 Fed. Cl. 591, 597 (2018) ("Plaintiff knew that she had agreed to get the degree, that [the agency] would pay for it, and that she would have to continue to work for [the agency] for a certain period of time. Given this obligation, the Court cannot see how the requirement that Plaintiff reimburse [the agency]  when she left its employ prematurely is an illegal exaction."). Therefore, this Court finds that the VA's collection in this case was lawful, and the United States' Cross-Motion to Dismiss must be **GRANTED**, while Ms. Pate's Motion for Partial Summary Judgment must be **DENIED**.

Count II of Ms. Pate's complaint alleges that in applying for deductions from her salary, the VA has made "materially false certifications" to the U.S. Treasury that the debt was enforceable, in violation of Treasury regulations. (Compl. at 8). The United States moves to dismiss this Count for lack of subject matter jurisdiction under RCFC 12(b)(1). The United

States argues that Ms. Pate "does not cite any 'separate source of substantive law that creates the right to money damages'" necessary to invoke this Court's jurisdiction, which is founded on the Tucker Act, 28 U.S.C. § 1491. (Def.'s Cross-Mot. at 24 (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*)).

    When challenged, the burden of establishing subject matter jurisdiction rests with the plaintiff, who must do so by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). This is true for *pro se* litigants even though they are often held to a more lenient standard in meeting other pleading requirements. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The Tucker Act does not create any substantive rights enforceable against the United States for money damages; therefore a separate legal source granting damages must be identified in order to establish jurisdiction. (*Id.*). Even though she has strenuously objected to the United States' collection actions, Ms. Pate has not met her burden to show any source of money damages for violation of the regulations she cites. The Court finds that for that reason it lacks subject matter jurisdiction over Count II, and it must **GRANT** the United States' Partial Motion to Dismiss Count II pursuant to RCFC 12(b)(1).

### III.    Conclusion

    For the reasons set forth above, the Court **DENIES** Ms. Pate's Motion for Partial Summary Judgment (ECF No. 14) and **GRANTS** the United States' Cross-Motion for Summary Judgment (ECF No. 19). In addition, the Court **GRANTS** the United States' Partial Motion to Dismiss Count II (*Id.*). The Clerk is directed to enter judgment accordingly.

    **IT IS SO ORDERED.**



s/     David A. Tapp
DAVID A. TAPP, Judge